**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

GOAL ZERO LLC,

Plaintiff,

v.

LCG HOLDINGS LLC,

Defendant-Counterclaimant.

CIVIL NO. 23-1488 (SCC) (HRV)

**OMNIBUS MEMORANDUM AND ORDER**

The following motions have been referred to me for disposition: Plaintiff Goal Zero LLC's ("Goal Zero") "Motion to Compel Responses to Interrogatories" (Docket No. 135); Goal Zero's "Motion to Compel Responses to Goal Zero's Request for Production of Documents" (Docket No. 146); and LCG Holdings LLC's ("LCG") "Motion to Compel Responses to Interrogatories and Production of Documents" (Docket No. 157). For the reasons set forth below, the motions are GRANTED in part, DENIED in part and MOOT in part.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

The complaint, filed on September 28, 2023 (Docket No. 1), alleges in sum and substance that on November 5, 2020, Goal Zero and LCG entered into a distribution

---

[1]    These facts are drawn from the complaint (Docket No. 1), the amended counterclaim (Docket No. 61), and the parties' joint ISC memorandum. (Docket No. 48).

1

agreement under which LCG would distribute Goal Zero's portable power and renewable energy products in Puerto Rico on an exclusive basis. Pursuant to the terms of the agreement, LCG would issue purchase orders ("POs") to acquire products from Goal Zero. The agreement contemplated that once POs were sent by LCG, Goal Zero would issue pro forma invoices matching the details of said POs. It was also agreed that once issued, these pro forma invoices would amount to an acceptance of the orders. Further, at least as initially understood, payment on invoices was due before shipment. LCG was also obliged to comply with all other terms and conditions specified by Goal Zero's invoices. Any failure to comply with terms and conditions, or to remedy any breach, allowed Goal Zero to terminate the distribution agreement for just cause. And, in case of termination for nonperformance, LCG's indebtedness, if any, would become immediately due and payable.

Goal Zero alleges that LCG agreed to purchase significant amounts of product from Goal Zero pursuant to several POs it issued. Goal Zero says that it approved said POs and delivered products to LCG. Plaintiff also avers that it reserved inventory for, or procured the manufacturing of, more than $11,500.000 worth of additional products. However, according to Goal Zero, following delivery of the products and/or issuance of the invoices covered by the POs, as the case may have been, it had to make numerous collection efforts, to no avail. Goal Zero further alleges that as a result of the lack of payment by LCG, it refused to tender delivery of bills of lading for shipments which were in transit at the time the lack of payment issues arose and conditioned delivery of said bills of lading on payment of the past due amounts, which allegedly never occurred.

2

Goal Zero additionally avers that in a good faith attempt to help LCG pay its debt, a Letter Agreement was issued in relation to a specific PO, agreeing to release a portion of the products held at the port of San Juan. This Letter Agreement did not release LCG from its indebtedness and imposed certain obligations in relation to the products to be released. Goal Zero claims that LCG failed to fully comply with the obligations set forth in the Letter Agreement. On July 24, 2023, after having unsuccessfully and repeatedly requested payment on the pending invoices, Goal Zero issued written notice to LCG terminating their exclusive distribution relationship. The termination notice was prompted by LCG's alleged failure to comply with its payment obligations and for actions and omissions in the distribution and marketing of the products that adversely and substantially affected Goal Zero's interests, resulting in lost sales opportunities and loss of goodwill. According to Goal Zero's accounting records, LCG owed a principal balance of $5,808,840.80 in past due amounts under the POs at issue. Goal Zero brings causes of action for breach of contract and collection of monies; collection of prejudgment interest; contractual damages in an amount of no less than $11,600,000; and seeks a declaratory judgment declaring that Goal Zero had just cause to terminate the exclusive distributor agreement with LCG.

LCG answered the complaint, denying liability, asserting numerous affirmative defenses, and bringing a counterclaim against Goal Zero. The original counterclaim included three causes of action: (i) "dolo" or fraud in the fulfillment of the obligations; (ii) violations of Puerto Rico Act 75; and (iii) contractual interference and punitive damages. LCG contends that Goal Zero wrongfully terminated the distribution contract and interfered with LCG's client relationships causing damages in all respects. Following

3

a motion to dismiss filed by Goal Zero, LCG amended its counterclaim and asserted causes of action for unlawful termination of the distribution agreement under Puerto Rico Act 75, and damages for tortious contractual interference. (Docket No. 61).

In support of these claims, LCG avers that while the distribution agreement generally required it to pay Goal Zero for the products in advance before shipping, LCG was sometimes forced to pay for orders even before they went into production. According to LCG, in many instances throughout the years, Goal Zero canceled or withheld orders placed months after accepting the POs, claiming that the cancellations were due to reasons beyond their control, including supply chain problems, and supply limitations resulting from the pandemic, among others. LCG underscores that the total sales objective of Goal Zero products for the years 2019 to 2022 was less than $3,500,000.00; yet, notwithstanding orders cancelled and withheld by Goal Zero, LCG achieved sales of Goal Zero's products totaling $13,417,564.26. Said amounts, LCG asserts, do not include or consider its lost sales, which were considerable, due to Goal Zero's negligence, errors, and omissions when attempting to fulfill LCG's orders.

LCG further alleges that it invested hundreds of thousands of dollars in advertising, promoting, and distributing the Goal Zero brand and its products. Through its efforts, LCG made Goal Zero known in Puerto Rico, creating brand recognition and developing a significant market for its products. LCG purchased products from Goal Zero for its account; imported the products into Puerto Rico; paid for its account all duties and taxes; stocked and kept an inventory of the products, when available, to meet customer demands; decided the price at which to sell the products; invested in funds in the promotion and advertising of the products; and kept Goal Zero informed of the

development of the market and the needs and expectations of the customers, including the terms of the large-scale contracts with the Municipalities of San Juan and Bayamón. LCG maintains that its performance surpassed Goal Zero's expectations or estimates for the Puerto Rico market during the term of their relationship.

LCG posits that it was Goal Zero's actions what prompted the termination of the distribution agreement by: failing to deliver and/or cancelling orders without no reasonable advance notice; selling directly and/or permitting direct sales from third parties to Puerto Rico-based consumers and businesses; failing to promptly intervene with U.S. Customs and Border Patrol ("CBP") to assist LCG in resolving a dispute (which lasted years) where LCG was expected to pay an increased excise tax/tariff/fee due to an alleged misclassification of the products by Goal Zero and for which LCG had no responsibility; failing to deliver the products to LCG on time as promised with the Municipality of Bayamón and for LCG's retail division; purposefully withholding the bills of lading for the delivery of the products to the Municipality of San Juan (and to other potential clients); by colluding in bad faith with the Municipality of San Juan to by-pass LCG's rights; and by unduly pressuring LCG into signing "Promissory Notes" and foregoing its rights under the San Juan contract.

As per LCG, Goal Zero's unilateral decision to terminate the exclusive distribution agreement resulted in an estimated loss of sales in the amount of $3.5 million dollars for the year 2023. LCG has continued to spend considerable sums of money in keeping the store open and providing warranty service to Goal Zero's product even after termination. Lastly, LCG alleges that Goal Zero's lawsuit was filed in part as retaliation for LCG's

disclosure of Goal Zero's breaches, abuses, and irregularities to its parent company, and that it has suffered significant damages as a result of the actions undertaken by Goal Zero.

On June 3, 2024, the presiding District Judge referred this case to me to hold an initial scheduling and settlement conference. (Docket No. 37). I held the scheduling conference on August 22, 2024, and issued a case management order that, among other deadlines, set the close of discovery for October 31, 2025. (Docket No. 52). Thereafter, on January 13, 2025, counsel for LCG moved to withdraw from its legal representation. (Docket No. 66). It took LCG months, until May 20, 2025, to announce new legal representation. (Docket No. 94). On July 18, 2025, after the parties failed to reach a settlement agreement, I entered a new scheduling order. (Docket No. 97).

The discovery process in this case has been tortuous. Almost three years after the commencement of this action, the parties have not yet concluded the written discovery phase. Moreover, the process has been marred by the typical approach of refusing to answer or produce, the customary interposing of boilerplate objections, and frustratingly, constant finger pointing regarding which side is responsible for noncompliance and delays. At the beginning of the year, I accommodated additional time (almost three months) for informal resolution without court intervention, including time for the parties to supplement or amend discovery responses, submit letters of deficiencies, and meet and confer. (Docket No. 124). At the end of the term provided, the three motions to compel currently pending before the court were filed. (Docket Nos. 135, 146, and 157).

## II.    LEGAL FRAMEWORK

Federal Rule of Civil Procedure 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case" and that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). While "[t]he Federal Rules of Civil Procedure permit broad discovery, … 'discovery, like all matters of procedure, has ultimate and necessary boundaries.'" *Bonner v. Triple-S Management Corp.*, 68 F.4th 677, 684 (1st Cir. 2023) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1947)). Within the scope of Rule 26, a party may conduct discovery by serving another party with interrogatories or a request for documents pursuant to Rules 33 and 34, respectively. Interrogatories and requests for production of documents are directed to the parties and must be answered by the parties to whom they are directed. Fed. R. Civ. P. 33(b)(1)(A); Fed. R. Civ. P. 34(b)(2)(A).

The response to an interrogatory under Rule 33 is either: (1) an answer in writing and signed under oath by the party to whom it is directed, or (2) an objection signed by the attorney who made the objection. Fed. R. Civ. P. 33(b)(1)(3) and (5). If a party objects to an interrogatory request, "[t]he grounds for objecting … must be stated with specificity." Fed. R. Civ. P. 33(b)(4). And where a response shows that "the answers as a whole disclose a conscientious endeavor to understand the questions and to answer fully those questions as are proper, the rule has been satisfied." *Sánchez-Medina v. UNICCO Service Co., et al.*, 265 F.R.D. 24, 27 (D.P.R. 2009) (cleaned up).

In turn, under Rule 34, the responding party must produce documents that are within the party's "possession, custody or control." Fed. R. Civ. P. 34(a)(1). Once properly served, the response to a request for production of documents is generally either (1) actual production of the documents, or (2) an objection stating with specificity the

grounds for objecting to the request. Fed. R. Civ. P. 34(b)(2)(B); *see also Vazquez-Fernandez v. Cambridge College, Inc.*, 269 F.R.D. 150, 154 (D.P.R. 2010).

If a party fails to "answer an interrogatory submitted under Rule 33" or "produce documents . . . as requested under Rule 34," the affected party may move for an order compelling disclosure. Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv). The party filing a motion to compel discovery has the initial burden of showing that the requested discovery is relevant. *Maggi v. Grafton Cnty. Dep't of Corr.*, No. 18-cv-59-LM, 2021 WL 12147799, 2021 U.S. Dist. LEXIS 269964 at *5 (D.N.H., Nov. 9, 2021).  This initial burden is not onerous. *Phillips Med. Sys. P.R., Inc. v. Alpha Biomedical & Diagnostic Corp.*, Civil No. 19-1488 (BJM), 2021 WL 150411, 2021 U.S. Dist. LEXIS 8739 at *12 (D.P.R., Jan. 15, 2021). "Once this burden is met, the party resisting production bears the burden to show that the discovery is improper." *Id.* (citing *Autoridad de Carreteras y Transportación v. Tanscore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016)). A "mere statement by a party that the interrogatory [or request for production] ... was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection. On the contrary, the party resisting discovery must show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Aponte-Navedo, et al. v. Nalco Chemical Co., et al.*, 268 F.R.D. 31, 36–38 (D.P.R. 2010) (quoting *Sánchez-Medina v. UNICCO Serv. Co.*, 265 F.R.D. at 27) (cleaned up). "[A] trial court has broad discretion in ruling on pre-trial management matters[.]" *Bonner v. Triple-S Management Corp.*, 68 F.4th at 684.

With the above-outlined principles in mind, I turn to the pending motions to compel, which I address separately.

## III.  DISCUSSION

**A.  Goal Zero's Motion to Compel Responses to Interrogatories (Docket No. 135)**

Goal Zero moves to compel complete responses to several interrogatories (2, 4, 5, 12, 13, 15, 17, 21, and 25), arguing that LCG's answers are evasive, nonresponsive, supported only by boilerplate objections and an improper blanket reference to its initial disclosures. As to interrogatories 9 and 20, which were purportedly supplemented, Goal Zero requests that LCG be required to verify the supplemental answers with a statement under the penalty of perjury. Lastly, Goal Zero requests an award of expenses and reasonable attorneys' fees. LCG responds that the motion to compel mischaracterizes both the substance of its responses as well as the nature of its objections. LCG maintains that it responded to Goal Zero's requests in good faith, addressing each interrogatory completely, providing responsive information where appropriate, or lodging targeted objections to the ones that exceeded the permissible scope of discovery. (Docket No. 158).

After careful consideration of the arguments of the parties, and the applicable law, the undersigned rules as follows:

Interrogatory No. 2: **Granted in part and denied in part**. As drafted, the interrogatory is not vague or ambiguous as it calls for information related to witnesses that will or may testify at trial. The universe of witnesses that fit that description is not infinite or overly expansive. I also reject the contention that the interrogatory is objectionable as compound and/or for exceeding the limit allowed by the rule due to its subparts. *See Asarco LLC v. Union Pac. R.R. Co.*, 2016 U.S. Dist. LEXIS 58262, 2016 WL 1755241, at *10 (D. Idaho 2016) (subparts that are "logically or factually subsumed within and necessarily related to the primary question" amount to a single interrogatory); *Trevino v. ACB American Inc*, 232 F.R.D. 612 (N.D. Cal. 2006) ("Although the term discrete subparts does not have a precise meaning, courts generally agree that interrogatory subparts ought to be counted as one interrogatory ... if they are logically or factually subsumed within and necessarily related to the primary question."). Moreover, LCG improperly lodges objections based on privilege without following the proper

procedural mechanisms for doing so or putting the Court in a position to adequately assess the asserted privilege. *Rivera v. Kmart Corp.*, 190 F.R.D. 298, 300 (D.P.R. 2000) (citing Fed. R. Civ. P. 26(b)(5)(A)). Accordingly, LCG is ordered to answer the interrogatory. *See Joiner v. Blackwood*, No. 93-374-B, 1995 U.S. Dist. LEXIS 2722, at *8 (D.N.H. Feb. 27, 1995) (ordering Plaintiff "to answer interrogatory thirty directly -- that is, he shall list any witnesses he presently intends to call to testify at trial and summarize the subject matter of their expected testimony, or state that he does not intend to call witnesses at trial."). However, only a brief summary of the expected testimony is required. Comprehensive narrative responses need not be provided. *Thomas v. Rockin D Marine Servs., LLC*, 2013 U.S. Dist. LEXIS 48223, at *8 (E.D. La. April 2, 2013) (ordering party to supplement interrogatory to include adequate summaries at least 1-2 lines in length for all witnesses); *Hanford Exec. Mgmt. Emple. Assn'. v. City of Hanford*, 2013 U.S. Dist. LEXIS 150359, 2013 WL 5671460 at *8 (E.D.Cal. 2013) (observing that "[c]ontention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents"). However, subpart G of the interrogatory—"[i]dentify any statement, whether written or oral, that the person has given related in any way to the subject matter of this action"—is overly broad and does not have to be answered.

Interrogatories Nos. 4 and 5: **Granted.** A summary explaining the knowledge of the individuals listed in the answer shall be provided. However, a long narrative is not necessary. *Thomas v. Rockin D Marine Servs., LLC*, 2013 U.S. Dist. LEXIS 48223, at *8. Also, I agree with Goal Zero that the response contained in the March 13 letter by LCG referring to its initial disclosures is not acceptable. "Answering interrogatories simply by directing the proponent to rummage through other discovery materials falls short of the obligations imposed by Rule 33." *Mulero-Abreu v. Puerto Rico Police Dept.*, 675 F.3d 88, 93 (1st Cir. 2012).

Interrogatory No. 9: **Moot**. While supplemental responses must be verified and submitted under the penalty of perjury, *see* Fed R. Civ. P. 33(b)(3); *see also Puerto Rico Aqueduct & Sewer Authority v. Clow Corp.*, 108 F.R.D. 304, 313 (D.P.R. 1985) (ordering that supplemental answers be filed under oath), LCG has informed that the corresponding verified supplemental answers have been provided. (Docket No. 158 at 13).

Interrogatory No. 12: **Granted.** A summary explaining the knowledge of the individuals listed in the answer shall be provided. However, a long narrative is not necessary. *Thomas v. Rockin D Marine Servs., LLC*, 2013 U.S. Dist. LEXIS 48223, at *8.

Interrogatory No. 13: **Granted.** A summary explaining the knowledge of the individuals listed in the answer shall be provided. However, a long narrative is not required. *Thomas v. Rockin D Marine Servs., LLC*, 2013 U.S. Dist. LEXIS 48223,

at *8. Again, I agree with Goal Zero that the response contained in the March 13 letter by LCG referring to its initial disclosures is not acceptable. *Mulero-Abreu v. Puerto Rico Police Dept.*, 675 F.3d at 93 ("Answering interrogatories simply by directing the proponent to rummage through other discovery materials falls short of the obligations imposed by Rule 33.").

Interrogatory Nos. 15 and 17: **Granted.** A summary explaining the knowledge of the individuals listed in the answer shall be provided. However, a long narrative is not required. *Thomas v. Rockin D Marine Servs., LLC*, 2013 U.S. Dist. LEXIS 48223, at *8. The response contained in the March 13 letter by LCG referring to its initial disclosures is not acceptable. *Mulero-Abreu v. Puerto Rico Police Dept.*, 675 F.3d at 93.

Interrogatory No. 20: **Moot**. While supplemental responses must be verified and submitted under the penalty of perjury, *see* Fed R. Civ. P. 33(b)(3); *see also Puerto Rico Aqueduct & Sewer Authority v. Clow Corp.*, 108 F.R.D. 304, 313 (D.P.R. 1985) (ordering that supplemental answers be filed under oath), LCG has informed that the corresponding verified supplemental answers were provided. (Docket No. 158 at 13).

Interrogatory No. 21: **Granted.** LCG improperly raises an objection based on privilege (Trade Secrets) without following the proper procedural mechanisms for doing so or putting the Court in a position to adequately assess the asserted privilege. *Rivera v. Kmart Corp.*, 190 F.R.D. 298, 300 (D.P.R. 2000) (citing Fed. R. Civ. P. 26(b)(5)(A)). The information requested (clients allegedly developed by LCG for Goal Zero Products) is relevant to averments in LCG's amended counterclaim. And the fact that the information requested involves trade secrets does not, without more, prohibit discovery. *Innovative Commun. Sys. v. Innovative Computing Sys.*, 2014 WL 3535716, 2014 U.S. Dist. LEXIS 96269, at *11 (W.D. Tx. July 16, 2014) (citing Advisory Committee Notes to Rule 26 which explicitly state that "courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure."); *see also Ares-Serono, Inc. v. Organon Int's B.V.*, 151 F.R.D. 215, 220 (explaining that "the court must generally weigh on the one hand the right of a plaintiff to examine relevant evidence against the right of a defendant to protect its trade secrets and confidential data."). Nonetheless, inasmuch as courts must exercise discretion to avoid the unnecessary disclosure of confidential data to a competitor, the information responsive to this interrogatory will be subject to a confidentiality agreement to be executed by the

parties.[2] *See Especias Montero, Inc. v. Best Seasonings Grp., Inc.*, 2021 U.S. Dist. LEXIS 153144, at *12-13 (D.P.R. Aug. 13, 2021).

Interrogatory No. 25: **Denied.** The answer is responsive at this stage. The information shall be supplemented during the expert discovery stage. *See* Fed. R. Civ. P. 26(e).

**B.    Goal Zero's Motion to Compel Reponses to its Request for Production of Documents (Docket No. 146)**

Goal Zero moves the Court to compel responses to its request for production of documents ("RFP") Nos. 9, 19, 22, 24, 26, 27–34, 35, 37–41, 43, 45, 46, 50–51, 54, and 57–66. Specifically, Goal Zero seeks an order directed at LCG to produce all responsive documents; identify by Bates number any responsive documents already produced; or, alternatively, certify that no responsive documents exist or are within LCG's possession, custody, or control, and reject improper boilerplate objections, requiring LCG to conduct a reasonable supplemental search. Lastly, Goal Zero requests that the Court award its reasonable expenses, including attorneys' fees, incurred in bringing this motion.

LCG opposes (Docket No. 178), arguing that it has produced responsive documents on a rolling basis totaling approximately 2,400 Bates-stamped pages. LCG also claims that what remains in dispute is narrow, alluding first to "competitively sensitive commercial information" such as "customer lists, pricing, margins, and cost structure", all of which, it says are confidential and privileged. (Id. at 2). Second, LCG opposes an order to produce documents seeking counsel's litigation files and materials

---

[2]    The parties are warned that the undersigned expects that a standard confidentiality agreement will not be a controversial matter that will generate the need for court intervention.

revealing trial strategy. LCG emphasizes that these materials are protected by the work-product doctrine. Finally, LCG generally asserts that its remaining objections should be sustained because they "identify concrete defects of duplication, temporal overbreadth, proportionality, and relative access." (Id.).

For ease of reference, I follow the same grouping of RFPs in Goal Zero's motion to compel. The undersigned rules as follows:

RFP Nos. 9, 57, 58, 59, 60, 61, 62, 63, 64, 65 and 66 (Documents Supporting Allegations of Fraud, Duress, Collusion, and Contractual Interference): **Granted.** The boilerplate objections of overly broad, oppressive and unduly burdensome are overruled for lack of specificity. *Sánchez-Medina*, 265 F.R.D. at 27. The requested documents are relevant to claims asserted in the amended counterclaim. Thus, to the extent responsive documents in LCG's possession, custody, or control exist, they shall be produced or the specific Bates number(s) identified if LCG insists that a responsive document has already been produced. A general reference to all materials or large Bates ranges is not acceptable. Otherwise, LCG must certify under the penalty of perjury that no documents exist. I decline to follow the discovery scope temporal limitation proposed by LCG. Documents may be relevant and responsive, particularly as to the issue of damages, even if they post-date the termination of the distribution agreement.

RFP Nos. 19, 22, 24, 27, 28, 29, 30, 31, 32 and 35 (Damages, Sales, Customer and Market Information): **Granted.** The boilerplate objections of overly broad, oppressive and unduly burdensome are overruled for lack of specificity. *Sánchez-Medina*, 265 F.R.D. at 27. Again, the documents requested are relevant to matters that LCG has placed in controversy in its amended counterclaim. Thus, to the extent responsive documents in LCG's possession, custody, or control exist, they shall be produced or the specific Bates number(s) identified if LCG insists that a responsive document has already been produced. A general reference to all materials or large Bates ranges is not acceptable. Otherwise, LCG must certify under the penalty of perjury that no documents exist. However, responsive documents characterized as "competitive sensitive information" that are being withheld on grounds of confidentiality or trade secrets, shall be produced under a confidentiality agreement to be entered into by the parties.[3] See my ruling above

---

[3]    It is unclear to the undersigned whether a confidentiality agreement governing discovery exists in this case or not. In correspondence attached to some of the motions (*See* Docket No. 146-4), it is stated that the parties could not agree on the terms of a confidentiality agreement. However, in its reply to LCG's opposition to the motion to compel, Goal Zero notes that "[t]he parties have already executed a

with respect to Goal Zero's Interrogatory No. 21. I decline to follow the discovery scope temporal limitation proposed by LCG. Documents may be relevant and responsive, particularly as to the issue of damages, even if they post-date the termination of the distribution agreement.

RFP Nos. 50, 51, and 54 (Documents Concerning Municipal Projects and Third-Party Interactions): **Granted.** The boilerplate objections of vague, overly broad, oppressive and unduly burdensome are overruled for lack of specificity. *Sánchez-Medina*, 265 F.R.D. at 27. Thus, to the extent responsive documents in LCG's possession, custody or control exist, they shall be produced or the specific Bates number(s) identified if LCG insists that a responsive document has already been produced. A general reference to all materials or large Bates ranges is not acceptable. Otherwise, LCG must certify under the penalty of perjury that no responsive documents exist. I also agree that it is irrelevant that the party seeking discovery already knows the facts as to which it seeks discovery or that the materials are equally available to the propounding party from its own records. *Milner v. City of Bristol*, 2020 WL 6049261, 2020 U.S. Dist. LEXIS 188770 (D. Conn. Oct. 13, 2020) (cleaned up). I decline to follow the discovery scope temporal limitation proposed by LCG. Documents may be relevant and responsive, particularly as to the issue of damages, even if they post-date the termination of the distribution agreement.

RFP Nos. 37, 38, 39, 40, 41 and 42 (Other Core Litigation Materials): **Granted in part and Denied in part.** As to RFP 37, and only RFP 37, I am limiting production of any responsive documents (meeting notes), if they exist and are in the possession, custody, or control of LCG, up to and including the date of the termination of the distribution agreement. The pleadings in this case do not reveal any allegations suggestive of communications or "meetings" between Goal Zero and LCG representatives occurring after termination. The motion to compel is denied as to the remaining RFPs (38, 39, 40, 41 and 42), as overly broad, duplicative, and/or protected by the work-product privilege insofar as from their plain language, they seek the mental impressions of counsel and/or litigation strategy.  For instance, "all documents, communications, and things referred to, or consulted in preparing Your Initial Disclosures…" is the textbook definition of overly broad. Far-fetched as the example may seem, the RFP calls for production of a dictionary if counsel consulted one. The same rationale applies to an RFP that requests "all documents and communications produced or provided in connection with this Action by a non-party …" regardless of relevance, "all documents and communications" a party intends to rely on for motions and expert reports, as well

---

Confidentiality Agreement governing the treatment of confidential information produced in discovery." (Docket No. 186 at 4). In any case, whether a confidentiality agreement exists, or one needs to be executed, I am ordering this discovery be produced subject to such an agreement.

as all documents and communications that are admissions by a party opponent under Fed. R. Evid. 801. I must draw the line somewhere. These RFPs do not only request discoverable documents; they seek insight into counsel's mental impressions and legal theories in complying with discovery obligations and in preparing for trial. *See United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 688 (1st Cir. 1997) (observing that the governing rule, Fed. R. Civ. P. 26(b)(3)(B), directs that "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."); *see also, e.g., Williams v. Cty. of San Diego,* No. 17-cv-00815-MMA (JLB), 2018 U.S. Dist. LEXIS 177008, 2018 WL 4961523, at *5 (S.D. Cal. Oct. 15, 2018) (interrogatories and a request for production asking the producing party to identify and produce documents counsel reviewed "in conjunction with" the litigation sought information covered by the work product doctrine); *McKie v. Sears Prot. Co.,* No. CV 10-1531-PK, 2011 U.S. Dist. LEXIS 45306, 2011 WL 1670910, at *2 (D. Or. May 3, 2011) (holding that interrogatory seeking "a list of documents consulted by defendants in the preparation of answers to interrogatories" would require disclosure of work product); *In Re Xarelto (Rivaroxoban) Prods. Liab. Litig.*, 314 F.R.D. 397, 410-14 (E.D. La. 2016) (compilation of documents reviewed and provided to witnesses in preparation for depositions protected by work-product doctrine). These RFPs go as far as prematurely requesting opposing counsel's position on the admissibility of certain documents and statements under the rules of evidence.

C.    **LCG's Motion to Compel Responses to Interrogatories and Production of Documents (Docket No. 157)**

LCG requests that the Court compel Goal Zero to provide complete, substantive responses to interrogatories and produce documents responsive to its RFPs. LCG generally argues that the relief it seeks is warranted because Goal Zero has responded to virtually every significant discovery obligation with boilerplate objections; asserted bulk and blanket references to thousands of pages of documents without identifying which of those documents responds to which request; raised the attorney-client privilege to shield the factual basis of claims that Goal Zero itself placed before the Court; and provided selective supplementation that leave the core interrogatories unanswered.

In response, Goal Zero argues that the motion to compel should be denied because it has fully responded to the requests, supplemented those responses where appropriate,

15

conducted diligent and proportional searches, produced responsive, non-privileged documents, identified specific Bates ranges where applicable, and explained the limits of the information maintained in the ordinary course of its business. (Docket No. 181). Goal Zero further claims that LCG moves to compel not because it has identified specific responsive documents withheld or information not disclosed, but because it speculates "that additional materials, different records, or more favorable evidence must exist." (Id. at 2). It also contends that the Rules do not require a party to do what LCG seeks: create documents that do not exist, generate litigation-specific analyses, reconstruct business records not maintained in the ordinary course, prepare narrative summaries of documents already produced, disclose information outside its possession, custody, or control, or reorganize a usable production into the requesting party's preferred litigation roadmap.

In ruling on this motion to compel, I will also follow as a guide the order and grouping of discovery items included in LCG's motion.

Interrogatories No. 1, 4 and 15: **Granted in part and denied in part.** The answers to Interrogatories Nos. 1 and 2 shall be supplemented to include phone numbers and current place of employment.[4] The motion to compel is granted in part and denied in part with respect to Interrogatory No. 15. The supplemental answer referring to the response to Interrogatory No. 4 and the persons named therein is adequate and sufficient. However, the requested contact information and place of employment shall be provided.

Interrogatory No. 16; RFP Nos. 20 and 25: **Granted in part and denied in part.** As to Interrogatory 16, the answer must be supplemented to include a more detailed explanation regarding the steps and measures undertaken to monitor,

---

[4] Goal Zero cannot seriously claim that it is able to facilitate contact and produce these witnesses but cannot provide the requested contact or place of employment information.

detect and stop sales of Goal Zero products by persons or entities other than LCG. The reference to one letter and the supplemental response attributing products reaching Puerto Rico due to "downstream redistribution by third parties to whom Goal Zero sold products outside of Puerto Rico" is lacking. It does not address any steps or measures undertaken to monitor and detect the sale and distribution of Goal Zero products through persons or entities other than LCG. If there were no such steps or measures undertaken, Goal Zero must specifically say so. As to RFP No. 20, I agree with Goal Zero that its representation that "it is not presently aware of any standalone, formal 'anti-diversion policies, rules, or programs' responsive to this request beyond documents already produced" is sufficient and that LCG has not established the existence of any such policy that Goal Zero has refused produce. *See. e.g., Bethea v. Comcast*, 218 F.R.D. 328, 329 (D. D.C. 2003) (party's suspicion that responding party failed to produce responsive documents does not justify compelled inspection); *Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 305, 311 (D. D.C. 2000) (a party's mere suspicion that its opponent must have documents that it claims not to have does not warrant granting a motion to compel); *Martin v. Hannu*, No. 21-cv-00364-HL, 2023 WL 11113646, 2023 U.S. Dist LEXIS 237298, at *4-5 (D. Or. Aug. 15, 2023) (explaining that the court cannot compel the production of documents based on a party's speculation or suspicion that relevant, responsive documents must exist). However, to the extent responsive documents exist as to RFP 25 that are being withheld on grounds of confidentiality or trade secrets, such objection is overruled. What's good for the goose is good for the gander. Subject to a confidentiality agreement, the documents shall be produced.

Interrogatory No. 18: **Denied.** The answer provided as supplemented is sufficient and the information requested should be subject to detailed supplementation as part of and during expert discovery. Fed. R. Civ. P. 26(e).

Interrogatories Nos. 24 and 25; RFP Nos. 9, 29, 34 and 35: **Denied.** LCG has not identified a particular deficiency as to which the Court can grant the relief of compelled supplementation or production. Despite LCG's legal discussion regarding the issue of mitigation, I am not persuaded that disclosure of more information can be compelled, or that documents exist that have not been produced. The way I see it, LCG speculates that more documents exist. However, a party cannot be compelled to create documents in order to comply with a specific RFP; the materials either exist or not. What impact the lack of proper records and documentation has on Goal Zero's ability to show it made reasonable efforts to mitigate its damages is a matter for another day. And Goal Zero, represented by competent counsel, is aware of the potential consequences of documents surfacing later to fill the evidentiary gap. With respect to RFPs 34 and 35, I adopt my reasoning for denying relief as to Interrogatory No. 18, with respect to RFPs 34. Matters related to the specific calculation or computation of damages, are

17

premature at this stage.[5] And I have denied a similar request to Goal Zero in relation to its Interrogatory No. 25.

RFP Nos. 7 and 27; RFP Nos. 2 and 3 in Third Request for Production: **Denied with a caveat.** Again, LCG speculates that additional documents responsive to the RFPs must exist despite representations by Goal Zero that it conducted a reasonable search and that it has already produced what is in its possession, custody, or control. I am not presented with a scenario where withheld documents have been identified with particularity, and where my role is only to decide if the grounds asserted in support of withholding are proper. That being said, Goal Zero is warned that it should not attempt to skirt its discovery obligations by making vague arguments regarding corporate affiliation. To the extent nonprivileged, responsive documents exist in the possession, custody, or control of entities closely related to it, such as RSG, NRG or BioLite, Goal Zero is directed to conduct a reasonable inquiry and search and supplement its production as appropriate. Legal ownership or actual physical possession of a document is not required to deem a document within the possession, custody, or control of a party; "documents are considered to be under a party's 'control' when that party has the right, authority or **ability** to obtain those documents upon demand." *Vazquez-Fernandez,* 269 F.R.D. at 164, n. 10 (quoting *Green v. Fulton,* 157 F.R.D. 136, 142 (D. Me. 1994)) (emphasis added); *see also EEOC v. Heart of Cardon, LLC*, 339 F.R.D. 602, 606 (S.D. Ind. 2021) (finding that documents were in the possession, custody and control of a party where information was held by related albeit separate corporate entities and noting that the focus of the inquiry is on the closeness of the relationship between the entities).

RFP Nos. 18, 19, 21, 22, 24, 27, 29, 33, 34 and 35: **Granted in part and denied in part.** The request is granted as to RFP Nos. 18 and 22. A generalized reference to the entire production consisting of thousands of pages is facially deficient. *See Michael Ho v. Marathon Patent Grp., Inc.*, No. 21-cv-00339-PSG, 2021 U.S. Dist. LEXIS 264505, at *10-11 (C.D. Cal. Aug. 24, 2021) (granting motion to compel and finding that reference to all documents produced without specifically identifying the relevant document is insufficient). The responsive documents must be specifically identified by Bates numbers. The request is denied as to the remaining RFPs in this group as Goal Zero has supplemented its responses or the matter has already been covered by my rulings above.

---

[5]    I also agree with Goal Zero that in responding to objections, LCG unreasonably expanded the scope of the RFP to suggest that responsive documents "include but are not limited to all sales data, financial statements, tax returns, accounting data and books, and projections prepared by Goal Zero, its employees, its representatives or third parties hired by Goal Zero."

18

RFP No. 1 in Third Request for Production: **Denied.** The request is outside of the period relevant to this litigation, vague, ambiguous, and speculative. By way of example, the irrelevant and speculative nature of this RFP is underscored by LCG's statements in its motion to compel that "[t]he period from 2017 to 2019 is directly relevant to understanding what consulting, lobbying, or advisory work was conducted in connection with Goal Zero's entry into the Puerto Rico market, work that **may have** informed the terms on which LCG was retained as the exclusive distributor, the expectations Goal Zero had for performance in the Puerto Rico market, and the identity of any third parties who were advising Goal Zero on Puerto Rico distribution strategy before, during, and after the relationship with LCG. (Docket No. 157 at 27) (emphasis added). LCG further argues that "**if** Goal Zero was receiving advice or assistance from third parties in connection with managing, restructuring, or terminating its Puerto Rico distribution channel, those advisors **may have** information bearing on Goal Zero's intent, its pre-termination planning, and the basis for its termination decision." (Id.).

**D.    Goal Zero's Request for An Award of Expenses and Attorneys' Fees**

I separately address Goal Zero's request for an award of expenses including attorneys' fees under Rule 37(a)(5). LCG opposes claiming that its objections and responses were substantially justified and that, at a minimum, the parties have a genuine dispute regarding the proper scope of the interrogatories at issue, the proportionality of the requested information, and the adequacy of the information already provided. On this score, I agree with LCG.

Whenever a court grants a motion to compel discovery, the Court may award the moving party reasonable expenses associated with filing the motion, including attorney's fees, unless it can be shown that (1) the moving party filed the motion before attempting in good faith to obtain the discovery without court intervention, (2) the opposing party's failure to disclose was substantially justified, or (3) other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A); *see also See Colon v. Blades*, 268 F.R.D. 129, 134 (D.P.R. 2010). On the other hand, if the motion to compel is granted in part and

denied in part, the Court **may**, "after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C) (emphasis added). Here, since I have granted in part and denied in part items in the motions to compel of both parties, apportioning reasonable expenses, including attorneys' fees, is discretionary. *See Bay Club members, LLC v. Selective Ins. Co. of Am.*, 2023 U.S. Dist. LEXIS 239876, at *12 (D. Mass. Jan. 31, 2023) (citing *Shea v. Millett*, Civil Action No. 17-cv-12233-ADB, 2019 U.S. Dist. LEXIS 150990, 2019 WL 4218477, at *2 (D. Mass. Sept. 9, 2019)). My rulings also reflect that both parties raised, at least as to some of their claims, arguments and/or objections that were substantially justified. As such, each party shall bear their own expenses and fees.

### IV.    CONCLUSION

In view of the foregoing, and as outlined in detail above, the pending motions to compel are GRANTED in part, DENIED in part and MOOT in part. Each side shall bear their own expenses and attorneys' fees.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 6th day of July, 2026.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE
